IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**DOUGLAS M.,**[1]

        Plaintiff,

v.

**COMMISSIONER OF
SOCIAL SECURITY**,

        Defendant.

Civ. No. 1:18-cv-00704-MC

**OPINION & ORDER**

_____

McSHANE, District Judge:

Plaintiff Douglas M. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"). The decision of the Commissioner is REVERSED and REMANDED for immediate calculation and award of benefits.

## BACKGROUND

On May 5, 2014, Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income alleging disability beginning August 15, 2010. Tr. 18. The claims were denied initially and upon reconsideration. *Id.* At Plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on November 10, 2016. *Id.* On December 9, 2016, the ALJ issued a decision finding Plaintiff not disabled. Tr. 28. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION & ORDER

# DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

# THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date, August 15, 2010. Tr. 20. The

ALJ determined Plaintiff had the following severe impairments: degenerative disc and joint disease of the lumbar spine; lumbago; history of cervical nerve root impingement status post disc fusion; tremor; post-traumatic stress disorder ("PTSD"); major depression; panic disorder; cognitive disorder NOS; and psychoactive substance abuse disorder. *Id.* The ALJ determined Plaintiff's impairments did not meet or equal a listed impairment. Tr. 21.

The ALJ determined Plaintiff had the RFC to perform a range of light work with the following additional restrictions: he is limited to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; he is limited to sitting, standing, and/or walking about six hours in an eight-hour work day, with normal breaks; he is limited to no more than frequent climbing of ramps or stairs and no climbing of ladders, ropes, or scaffolds; he is limited to no more than frequent balancing, stooping, kneeling, and crouching, and no more than occasional crawling; his is limited to no more than occasional bilateral overhead reaching; he must avoid concentrated exposure to temperature extremes; he must avoid concentrated exposure to excessive vibration; he must avoid concentrated exposure to fumes, odors, dust, gases, and poorly ventilated areas; he must avoid concentrated exposure to workplace hazards; he is limited to understanding and carrying out simple instructions in a work environment with few changes; he is limited to no interaction with the general public and no more than occasional, brief interaction coworkers and supervisors. Tr. 23.

The ALJ noted Plaintiff was 45 years old on the alleged onset date and has at least a high school education and is able to communicate in English. Tr. 27. The ALJ found Plaintiff is unable to perform past relevant work. *Id.* Based on his RFC, the ALJ determined Plaintiff was able to perform work as a marking clerk, electrical accessories assembler, or garment sorter. Tr. 28. As a consequence, the ALJ determined Plaintiff was not disabled. *Id.*

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) improperly rejecting the medical opinions of treating and examining sources; (2) improperly rejecting Plaintiff's subjective symptom testimony; (3) improperly rejecting lay witness testimony; and (4) failing to account for all of Plaintiff's limitations in the hypothetical question to the Vocational Expert ("VE").

## I. Medical Opinion Evidence

Plaintiff asserts that the ALJ erred by rejecting the opinions of examining psychologist William Trueblood, Ph.D., examining physician Daniel S. Selinger, M.D., and treating physician's assistant Jonathan Neal. The ALJ is responsible for resolving conflicts in the medical record. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" *Turner v. Comm'r*, 613 F.3d 1217, 1222 (9th Cir. 2010) (internal quotation marks and citation omitted). An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.*

### A. Dr. Trueblood

Dr. Trueblood examined Plaintiff on June 7, 2013. Tr. 687. In his report, Dr. Trueblood noted that Plaintiff's affect was appropriate, with no apparent anxiety or irritability. Tr. 692. During testing, Plaintiff performed one of the tests incorrectly and, after being told that he was not performing the test properly, continued to perform incorrectly. *Id.* Dr. Trueblood opined: "Possibly this reflects some frustration or the manner in which this gentleman might sometimes react when he encounters difficulty on a task." *Id.* Despite this, Dr. Trueblood rated Plaintiff's cooperation and effort as good. *Id.*

Dr. Trueblood also filled out a Mental Residual Function Capacity Report. Tr. 699. In that report, Dr. Trueblood opined that Plaintiff is moderately limited in a number of areas of sustained concentration and persistence; social interaction; and adaptation. Tr. 699-700. Of particular note,

Dr. Trueblood assessed marked limitations in Plaintiff's "ability to accept instructions and respond appropriately to criticism from supervisors." Tr. 700. The form defines a marked limitation as "A limitation which precludes the ability to perform the designated activity on a regular and sustained basis, i.e., 8 hours a day, 5 days a week or an equivalent work schedule." Tr. 699. Dr. Trueblood also completed a Rating of Impairment Severity for Plaintiff, in which he again assessed moderate impairments to activities of daily living and concentration, persistence, or pace, as well as "marked" impairments in social functioning.[2] Tr. 701. With respect to social functioning, Dr. Trueblood noted a "pattern of interpersonal problems on jobs. [Plaintiff] appears to have limited insight into any contribution he may make to these problems." *Id.* Dr. Trueblood indicated that Plaintiff had had one or two episodes of decompensation within the preceding year. Tr. 701-02.

The ALJ gave "significant weight" to Dr. Trueblood's opinion, noting that it was "reasonably consistent with [Plaintiff's] own work history." Tr. 25. "On the other hand, the claimant demonstrated 'good' cooperation with Dr. Trueblood during their interview—and there was no sign of anxiety or irritability. Such evidence suggests that the claimant can tolerate occasional, brief interaction with coworkers and supervisors." *Id.* "His history of anxiety and irritability, however, reasonably precludes jobs involving interaction with the general public." *Id.*

This conclusion is not, however, consistent with Dr. Trueblood's actual findings. As discussed above, Dr. Trueblood specifically noted Plaintiff's "marked" limitation with respect to accepting instruction and responding appropriately to criticism from supervisors. Dr. Trueblood similarly noted Plaintiff's pattern of interpersonal conflicts at work, which the ALJ agreed was

---

[2] In this context, "Social functioning refers to the capacity to interact appropriately, independently, and effectively with other individuals on a sustained basis. Impaired social functioning may be demonstrated by a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, social isolation, etc. Social functioning in work situations may involve interacting with the public, responding appropriately to persons in authority, or cooperating with co-workers. A marked limitation in social functioning is not the total number of areas impaired, but the nature and overall degree of interference with function." Tr. 701.

reasonably consistent with Plaintiff's work history. The fact that Plaintiff was cooperative and gave good effort during a single consultative examination is not substantial evidence to reject Dr. Trueblood's opinion concerning Plaintiff's limitations in sustained social functioning. Accordingly, the Court concludes that the ALJ erred by failing to credit Dr. Trueblood's opinion with respect to Plaintiff's ability to interact with coworkers and supervisors.

Social Security Ruling ("SSR") 85-15 addresses the necessity of appropriate interaction with supervisors and coworkers in the disability context:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; *to respond appropriately to supervision, coworkers, and usual work situations*; and to deal with changes in a routine work setting. *A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.*

SSR 85-15, *available at* 1985 WL 56857, at *4 (emphasis added).

In light of SSR 85-15, the Court cannot conclude that the ALJ's failure to address the marked limitations assessed by Dr. Trueblood was harmless.

### B. Dr. Selinger

Dr. Selinger examined Plaintiff on July 1, 2015. Tr. 703. He diagnosed Plaintiff with lower back pain, neck pain, and tremors, "especially in the left upper extremity." Tr. 706. In functional terms, Dr. Selinger limited Plaintiff to frequent manipulation and a maximum lifting and carrying capacity of 20 pounds occasionally and 10 pounds frequently due to back and neck pain. *Id.* Likewise, Dr. Selinger opined that Plaintiff could climb stairs if there are rails, but could never climb ladders, ropes, and scaffolds. *Id.* Plaintiff could kneel or crawl without limitation, but could only stoop or crouch occasionally because of back and neck pain. *Id.* Dr. Selinger

opined that Plaintiff could sit up to six hours in an eight-hour workday, but limited Plaintiff's standing and walking capacity to four hours due to back pain. *Id.*

The ALJ "generally adopted the exertional and postural limits recommended by Dr. Selinger," but with additional environmental restrictions to account for Plaintiff's asthma. Tr. 26. Despite this general adoption, the ALJ limited Plaintiff to sitting, standing, or walking "about six hours in an eight hour workday, with normal breaks." Tr. 23. The ALJ did not directly address either Dr. Selinger's opinion limiting Plaintiff to no more than four hours of standing or walking, or the limitation to frequent manipulation.

The Commissioner argues that the ALJ implicitly rejected Dr. Selinger's opinion by relying on the opinions of the reviewing physicians, who opined that Plaintiff could stand or walk up to six hours and had unlimited fine/gross manipulation. Tr. 66-67, 79-80, 96-97, 111-12. The Commissioner's argument is, however, contrary to the ALJ's findings, which expressly credited the postural and exertional limitations identified by Dr. Selinger. If the ALJ intended to reject Dr. Selinger's opinion, the ALJ was required to identify specific and legitimate reasons for doing so, supported by substantial evidence. The failure to offer such reasoning was error. Consistent with the RFC assessed in the present case, Tr. 23, light work "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, *available at* 1983 WL 31251, at *6. Dr. Selinger found Plaintiff limited to four hours of standing or walking. As such, the Court cannot conclude that the error was harmless.

### C. PA Jonathan Neal

Under the then-operative regulations, the opinion of a physician's assistant was considered an "other medical source," rather than an "acceptable medical source." *See Kimberly S. v. Comm'r*, No. 3:17-cv-01956-HZ, 2018 WL 6198275, at *4 (D. Or. Nov. 28, 2018) (summarizing regulatory

developments in the consideration of the opinions of "other medical sources," such as physician assistants and nurse practitioners).

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists.

SSR 06-03p, *available at* 2006 WL 2329939, at *3.

While opinions from non-acceptable medical sources may not be given controlling weight, their opinions may be used in determining the severity of the claimant's impairments and how it affects the claimant's ability to work. *Id.* The ALJ may reject the competent testimony of "other medical sources" for reasons "germane to the witness." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Germane reasons may include a finding that the testimony contradicts the witness's own earlier testimony or that of other medical specialists, or that the witness was biased. *Dale v. Colvin*, 823 F.3d 941, 944-45 (9th Cir. 2016).

In considering "other medical source" opinions, ALJ should weigh the length of relationship and frequency of contact; the level of consistency with other evidence of record; the degree to which the source presents relevant evidence to support an opinion; the quality of opinion explanation; specialty area expertise, if applicable; and any other factors that tend to refute the opinion. SSR 06-03p, 2006 WL 2329939, at *4-5. Depending on the facts of the case and the application of the factors, an opinion offered by a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," potentially including the medical opinion of a treating source. *Id.* at *5.

In this case, Mr. Neal submitted a brief letter on February 2, 2015, asking that Plaintiff be excused from work. Tr. 599. Mr. Neal opined that Plaintiff was "restricted from any competitive

work environment due to chronic nerve damage in cervical region with syrinx." *Id.* Mr. Neal indicated that Plaintiff's condition had persisted for five years. *Id.* The ALJ gave little weight to Mr. Neal's opinion, noting that it was cursory, contradicted by "relatively benign findings," and that Mr. Neal's conclusion that Plaintiff was unable to work was "outside the medical realm and is reserved solely to the Commissioner." Tr. 26. The ALJ also noted that Mr. Neal's conclusions were contradicted by the opinions of Dr. Nancy Maloney and Dr. Selinger. *Id.*

Plaintiff acknowledges that Mr. Neal's letter is brief, but contends that the letter is not offered in isolation and is supported by Mr. Neal's treatment notes. On April 5, 2012, Mr. Neal observed left side pain, bilateral tremors in Plaintiff's arms, and weakness in Plaintiff's left hand. Tr. 422-23. On December 11, 2012, Mr. Neal made similar observations. Tr. 416. On March 14, 2013, Mr. Neal again observed radicular pain on Plaintiff's left side, bilateral tremors, and reduced strength in Plaintiff's left hand, although he noted that Plaintiff "does appear to be in less pain than before." Tr. 411. On August 14, 2013, Mr. Neal observed antalgic gait, with painful and reduced range of motion on Plaintiff's left side, as well as pain and tremors on Plaintiff's right side. Tr. 408.

The ALJ acknowledged and discussed Mr. Neal's treatment notes, particularly those from 2015. Tr. 26. On July 27, 2015, Mr. Neal noted reduced range of motion, but "no real change in pain or mobility ranges—reduced tremors noted today on his UE and arms." Tr. 603. Identical notes were entered on September 4, 2015, June 25, 2015, April 10, 2015, March 2, 2015, February 2, 2015, and November 24, 2014. Tr. 634, 606, 612, 615, 618-19, 622. Mr. Neal's note from July 9, 2014, similarly indicates reduced range of motion and "no real change in pain or mobility ranges." Tr. 627.

While it seems dubious to characterize an observation of "no real change" in pain or mobility ranges as "benign" in light of Mr. Neal's consistent findings of pain and reduced range of motion, the ALJ did find that Mr. Neal's findings were contradicted by Drs. Maloney and Selinger. On July 25, 2012, Dr. Maloney found negative straight leg raise tests bilaterally, and "no impairment within bilateral upper or lower extremity movement not indication of tremor." Tr. 684-85. Dr. Selinger similar found negative straight leg raise tests bilaterally, with 5/5 bilateral motor strength, muscle bulk, and tone. Tr. 704-05. Like Mr. Neal, Dr. Selinger observed a tremor, which he described as "mild," in Plaintiff's left upper extremity. Tr. 704. As discussed above, Dr. Selinger assessed greater limitations than were ultimately incorporated into Plaintiff's RFC, but not so sweeping as those included in Mr. Neal's letter. Tr. 706. The ALJ reasonably found Mr. Neal's opinion to be contradicted by the opinions of acceptable medical sources.

On this record, the Court concludes that the ALJ gave a sufficiently germane reason for rejecting Mr. Neal's opinion.

## II. Subjective Symptom Testimony

To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina*, 674 F.3d at 1112. At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Carmickle*, 533 F.3d at 1160.

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*,

763 F.3d 1154, 1163 (9th Cir. 2014). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, or a claimant's daily activities. *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (internal quotation marks and citation omitted).

In this case, Plaintiff testified that he experiences tremors, which "cause different muscles in different parts of [his] body to spontaneously start moving on their own." Tr. 42-43. The tremors interfere with his ability to use his hands. Tr. 45. Plaintiff estimated that he could use his hands for between three and five minutes at a time "on a good day" due to his tremors. *Id.* Plaintiff testified that he experiences back pain and that pain medication leaves him "fuzzy-headed." Tr. 46. Plaintiff's pain medication leaves him unable to drive and so he does not maintain a driver's license. Tr. 47. Plaintiff is also prescribed sleep medication, but it causes him to sleep for 12 to 14 hours at a time and so he does not like to take it. Tr. 51. With respect to daily activities, Plaintiff testified that he is mostly unable to help with housework or chores, other than tending to his daughter while his fiancée cleans the house. Tr. 46. If he attempts to vacuum or perform tasks that require him to bend over, Plaintiff's back will begin to twitch, which causes him to fall. Tr. 46-47.

In terms of social functioning, Plaintiff visits with a neighbor once or twice per week, but does not otherwise participate in social activities. Tr. 48. Plaintiff left his previous work at a call center due to a combination of lower back issues and conflict with his supervisors. *Id.* Plaintiff similarly left his job at a pizza parlor after coming into conflict with a coworker. Tr. 48-49.

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's testimony "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 24. In the following paragraphs, the ALJ summarizes the medical opinion evidence and assigns weight to the opinions of medical and lay sources, but does not clearly relate those findings back to specific portions of Plaintiff's testimony or explain why that evidence contradicts Plaintiff's testimony. Tr. 24-27.

In similar circumstances, the Ninth Circuit has held that such reasoning is insufficient and reviewing courts are not permitted to "comb the administrative record to find specific conflicts" supporting the ALJ's conclusion. *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).

> Our review of the ALJ's written decision reveals that she did not specifically identify any such inconsistencies [between the plaintiff's testimony and the record]; she simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination. This is not the sort of explanation or the kind of "specific reasons" we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited. . . . Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error.

*Id.*

The Ninth Circuit further concluded that the ALJ's error was not harmless. *Id.* "Although the ALJ summarized a significant portion of the administrative record in support of her RFC determination, providing a summary of medical evidence in support of a residual functional capacity finding is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Id.* (emphasis in original). Courts cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting a claimant's

testimony where "the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony." *Id.* (emphasis in original).

The present case is squarely analogous to *Brown-Hunter*. A summary of the medical evidence supporting an RFC determination is no substitute for *specific*, clear, and convincing reasons for rejecting Plaintiff's subjective symptom testimony and this Court cannot trawl the record to make up the deficiency through its own findings. The ALJ erred by failing to provide adequate support for the rejection of Plaintiff's subjective symptom testimony and, consistent with *Brown-Hunter*, that error was not harmless.

### III. Lay Witness Testimony

Plaintiff asserts the ALJ erred by rejecting the lay witness testimony of Plaintiff's fiancée, Kristine E. Lay witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he or she "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ's reasons for rejecting a lay witness's testimony must also be "specific." *Stout*, 454 F.3d at 1054 . When "the ALJ's error lies in a failure to properly discuss competent lay witness testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.* at 1056.

In this case, Kristine E. submitted a Third-Party Function Report as part of Plaintiff's application. Tr. 230-37. Kristine E. reported Plaintiff is unable to "stand, walk, write, and use fine motor control of hands and body [due] to constant controllable [twitching] of mus[cles]." Tr. 230. He is unable to lift or carry heavy weight for any length of time due to "loss of strength and motor control of limbs from the [twitching]." *Id.* She reported that he watches television and

reads books or plays on the computer when he is able to do so. Tr. 231. Plaintiff will keep an eye on their daughter when her mother is busy and will care for the family pets, if the tasks involved do not require heavy lifting. *Id.* Kristine E. indicated that she does the bulk of the housework and childcare, as well as looking after their pets. *Id.* She reported that Plaintiff needs help getting dressed, bathing, and shaving due to a lack of fine motor control. *Id.* Plaintiff is able to help with washing dishes or vacuuming on a very limited basis. Tr. 232 (Plaintiff vacuums twice per month, for a total of two hours per month and "He can only do the above [vacuuming and dishes] for a few min before he has to stop and rest."). Approximately twice per month Plaintiff will shop for groceries for thirty minutes at a time. Tr. 233.

Kristine E. reported that Plaintiff has trouble lifting, squatting, bending, standing, reaching, walking, kneeling, stair climbing, completing tasks, and using his hands. Tr. 235. He can walk for about five minutes before needing to rest. *Id.* She reported that he gets along with authority figures "very well," but that in stressful situations he "gets frustrated easily and has to take about an hour to calm himself." Tr. 235-36. He handles changes in routine "badly" and Kristine E. indicates that she noticed unusual behaviors or fears, but did not provide further explanation. Tr. 236.

The ALJ gave "partial weight" to Kristine E.'s report, "to the extent they reasonably support the conclusion the claimant could perform light unskilled tasks." Tr. 27. The ALJ found that "[w]hile the claimant's severe impairments reasonably preclude the medium work he performed in the past, he can still potentially sustain less demanding tasks." Tr. 26. The ALJ noted that Kristine E. "acknowledged the claimant's symptoms still allowed him to prepare simple meals, engage in light housework chores, go shopping in stores, and help his daughter complete her homework." *Id.*

This is not an accurate recitation of what Kristine E. reported. As discussed above, Kristine E. said that Plaintiff could not do most household chores and that he could only sustain activity for a few minutes at time before needing to stop and rest. Kristine E.'s report clearly indicates that she is responsible for almost all of the household chores and childcare. There is nothing in Kristine E.'s report to support the conclusion that Plaintiff could sustain limited light work. The Commissioner argues that the report is internally inconsistent, but that is not a finding made by the ALJ and, furthermore, the Court finds no internal inconsistency.[3] Accordingly, the Court concludes that the ALJ erred by failing to give sufficient germane reasons for rejecting the lay witness testimony of Kristine E.

## IV. Remand

In this case, the Court has determined that the ALJ's opinion contains non-harmless errors and so must determine whether remand should be for further proceedings or for award of benefits. The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Triechler v. Comm'r*, 775 F.3d 1090, 1101-02 (9th Cir. 2014). A remand for award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. *Id.* at 1100-01 (internal quotation marks and citations omitted); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy). The second and third prongs of the test often merge

---

[3] The Commissioner also argues that the ALJ rejected Kristine E.'s testimony on the same basis that Plaintiff's subjective symptom testimony was rejected. As previously discussed, however, the ALJ failed to provide specific, clear, and convincing reasons for rejecting Plaintiff's subjective symptom testimony.

into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1178 n.7 (9th Cir. 2000).

In the present case, the ALJ erred by rejecting the medical opinions of Dr. Trueblood concerning Plaintiff's mental limitations, and Dr. Selinger concerning Plaintiff's exertional limitations. The ALJ further erred by rejecting Plaintiff's subjective symptom testimony and the lay witness testimony of Plaintiff's fiancée Kristine E. The Court concludes that the record is fully developed and that further administrative proceedings would serve no useful purpose. Consideration of the record leaves this Court in no doubt concerning disability. "Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). Accordingly, this case shall be remanded for an immediate calculation and award of benefits.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is REVERSED and REMANDED for immediate calculation and award of benefits.

DATED this 11th day of July, 2019.

                                               s/Michael J. McShane
                                               MICHAEL McSHANE
                                               United States District Judge